FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

_Jacksonville_ Division

2015 DEC 21  PM 2:55

### CIVIL RIGHTS COMPLAINT FORM

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

NYKA O'CONNOR
_Barry Reddish, Jared Cranford,_

Miller, Johnson, Mercardo, Combs,

~~Thompson, Smith, Rumbana, Julie Jones, Diane Andrews~~

(Enter full name of each Plaintiff and
prison number, if applicable)

CASE NUMBER. 3:15-CV-1504-J-39MCR
(To be supplied by Clerk's Office)

v.

_Barry Reddish, Jared Cranford, Miller,_

_Johnson, Mercardo, Combs, Thompson_

_Smith, Rumbaua, Julie Jones,_

_Diane Andrews._

(Enter full name of each Defendant.
If additional space is required, use the
blank area directly to the right).

_Individually &/or Officially, Jointly & severally._

## ANSWER ALL OF THE FOLLOWING QUESTIONS:

I.  PLACE OF PRESENT CONFINEMENT: Suwannee CI
     (Indicate the name and location)
     5964 US Highway 90, Live Oak FL 32060

II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES: Exhaustion of administrative remedies is
     required prior to pursuing a civil rights action regarding conditions or events in any prison, jail,
     or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the
     administrative grievance process was not completed prior to filing this lawsuit may be subject
     to dismissal.

III.  PREVIOUS LAWSUITS:

DC 225 (Rev 2/2012)                                          1

A.    Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?   Yes (✓)
No (   )

B.    Have you initiated other lawsuits in <u>federal court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?   Yes
(✓) No (   )

C.    If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

1.    Parties to previous lawsuit:

Plaintiff(s): *NYKA O'CONNOR*

Defendant(s): *Suwannee CI, et al*

2.    Court (if federal court, name the district; if state court, name the county):

*US Dist. Jacksonville FL*

3.    Docket Number: *3:15-cv-394 - JJC-JRK*

4.    Name of judge: *Timothy Corrigan*

5.    Briefly describe the facts and basis of the lawsuit: *Excessive Force,*
*Gastro Related Issues, Denial of Adequate*
*Care, Denial of Religious Diet, etc.*

6.    Disposition (Was the case dismissed? Was it appealed? Is it still pending?):
*Dismissed, on Appeal; 11th Cir # 15-12329*

7.    Approximate filing date: *early 2015, about 3-27-15*

8.    Approximate disposition date: *early 2015, about 4-13-15*
*See attached list of cases*

D.    Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so,

identify these suits below by providing the case number, the style, and the disposition of each case: _See attached list of cases_

IV.   **PARTIES**: In part A of this section, indicate your full name in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.   Name of Plaintiff: _NYKA OCONNOR_

Mailing address: _5964 US Highway 90_

_Live Oak FL. 32060_

B.   Additional Plaintiffs: _None._

In part C of this section, indicate the **<u>full name</u>** of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C.   Defendant: _Barry Reddish (w/m)_

Mailing Address: _7819 N.W. 228th Street, Raiford FL 32026_

_(probably relocated to Columbia CI)_

Position: _(Former Warden)_

Employed at: _Union CI, 7819 N.W. 228th St. Raiford FL 32026_

D.   Defendant: _Jared Cranford (w/m)_

Mailing Address: _7819 N.W. 228th St. Raiford FL 32026_

Position: _Sergeant_

Employed at: _UCI, 7819 N.W. 228th St. Raiford FL 32026_

E.  Defendant: _Miller   (W/M)_

Mailing Address: _7819 N.W. 228th St. Raiford FL 32026_

Position: _CO (correctional officer) Security_

Employed at: _UCI, 7819 N.W. 228th St. Raiford FL 32026_

F.  Defendant: _Johnson (W/M)_

Mailing Address: _7819 N.W. 228th St Raiford FL 32026_

Position: _Co (correctional officer) Security_

Employed at: _UCI, 7819 N.W. 228th St. Raiford FL 32026_

G.  Defendant: _Mercardo (W/M - probably Hispanic)_

Mailing Address: _7819 N.W. 228th Street, Raiford FL 32026_

Position: _Captain (Former - probably now at Columbia CI)_

Employed at: _7819 NW 228th St. Raiford FL 32026._

IV PARTIES

H. Defendant : Combs (W/M)
   Mailing       : UCI, 7819 N.W. 228th St. Raiford FL 32026
   Position      : Lt at UCI, Captain at FSP.
   Employed at : FSP, 7819 N.W. 228th St Raiford FL 32026

I. Defendant : Thompson (B/M)
   Mailing       : UCI, 7819 N.W. 228th St Raiford FL 32026
   Position      : Nurse
   Employed at: UCI, 7819 N.W. 228th St. Raiford FL 32026

J. Defendant : Smith (W/F)
   Mailing       : UCI, 7819 N.W. 228th St Raiford FL 32026
   Position      : Nurse
   Employed at : UCI, 7819 N.W. 228th St. Raiford FL 32026

K. Defendant : Rumbaua (Male - probably Phillipine (Asian)
   Mailing       : UCI (or FSP, 7819 N.W. 228th St. Raiford FL 32026)
   Position      : Psychiatrist
   Employed    : UCI (or FSP) at 7819 N.W. 228th St. Raiford FL 32026

L. Defendant : Julie Jones (W/F)
   Mailing       : Central Office, 501 S. Calhoun St. Tall FL 32399
   Position      : Secretary FDOC
   Employed    : Central Office, 501 S. Calhoun St Tall FL 32399

M. Defendant : Diane Andrews (W/F)
   Mailing     : UCI, 7819 N.W. 228th St. Raiford FL 32026
   Position    : Warden
   Employed    : UCI, 7819 N.W. 228th St. Raiford FL 32026

V.   STATEMENT OF CLAIM: State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. **Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.**

_See Attached._

VI.   STATEMENT OF FACTS: State as briefly as possible the FACTS of your case. Describe how each defendant was involved. **Do not make any legal arguments or cite any cases or statutes.** State with as much specificity as possible the facts in the following manner:

1.   Name and position of person(s) involved.
2.   Date(s).
3.   Place(s).
4.   Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5.   Nature and extent of injury (i.e., physical injury or how you were harmed by the acts of the defendant[s]).

_See Attached._

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

VII.   <u>RELIEF REQUESTED</u>: State briefly what you want the Court to do for you. Again, do not make any legal arguments or cite any cases or statutes.

Damages (Compensatory, Punitive, Nominal, Mental-Emotional),

Injunction (Preliminary & Permanent) or less Intrusive Order
to provide adequate care, especially for O'Connors
gastro issues, and care for O'Connors' other health issues;
Declatory Judgement that all acts & omissions violate
the Laws; Appointment of Counsel; Jury Trial on
all issues Triable. Costs & Fees. Any other relief
x NOTE: O'Connor does not seek to obtain damages
TWICE in Contract and Tort; but only once for
same damage/injury. Property returned &/or replaced.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this _15th_ day of ___Dec___, 2_015_.

NYKA TASSIANT OCONNOR

NYKA OCONNOR

(Signatures of all Plaintiffs)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☑delivered to prison officials for mailing or ☐ deposited in the prison's internal mail on: the _15th_
day of ___Dec___, 20_15_.

I Statement of Claim

1. Reddish, Cranford, Miller, Johnson, Mercardo, Combs, et al retaliating against Oconnor violates Free speech under US Const. Amend. 1 and constitute breach of Contract under Federal Common Law of Contracts & Fla Contract Laws

2. Cranford, Johnson & Combs falsifying incident reports & D.R's constitute Federal Common Law of Fraud & Fla Tort of Fraud.

3. Cranford, Miller, Combs, & Johnson placing O'connor on strip, denying meals, in inhumane conditions, violates Cruel & Unusual Punishment under US Const. Amend. 8, Federal Common Laws of Contract & Fla Contract Laws.

4. Thompson, Smith, Rumbaua performing Mental Assessment improperly to ETO & place O'connor on SHos, violates Cruel & Unusual Punishment, & Due Process, under US Const. Amend 8 & 14; Federal Common Laws of Contract & Fla Contract Laws.

5. Cranford and Johnson using Excessive Force on O'connor constitute Violation of Cruel & Unusual Punishment under US Const. Amend 8, and constitute Breach of Contract under Federal Common Laws & Fla Contract Laws, Assault & Battery Tort, Assault ~~and~~ and Battery crimes under Fla Laws, FS 944.35, FS 784.011 & FS 784.03.

6. Combs failing to intervene in said Excessive Force, ~~and~~ ensuring & supervising the same, constitute violation of Cruel & unusual Punishment under US Const. Amend 8, constitute Breach of Contract under Federal Common Laws & Fla Contract Laws, Assault & Battery Tort, Assault & Battery Crimes under Fla Laws, FS 944.35, 784.011, 784.03

7. Nurse Smith being deliberately indifferent to O'connors' serious medical needs, constitute Cruel & unusual Punishment under US Const. Amend 8, Breach of Contract under Federal Common Laws of Contract & Fla Contract Laws.

8. Cranford making sexually harassing gestures on video with verbal harassment, constitute Cruel & Unusual Punishment under US Const Amend 8, and Breach of Contract under Federal Common Laws & Fla Contract Laws.

9. FDOC Secretary Jones & UCI Warden Discriminating against O'connor violates ADA & RA, Breach of Contract under Federal Common Laws & Fla Contract Laws.

II statement of Claim

10. Secretary Jones & Warden Andrews, denying adequate diet to comply with His gastro disability & religion, violates ADA, RA & RLUIPA, US Const Amend 1, constitute Breach of Contract under Federal Common Laws & Fla Contract Laws

11. Secretary Jones, Warden Reddish & Andrews, Combs, Cranford, Johnson Miller, failing to return OConnors' personal property since 12-11-11 to date, constitute Breach of Contract under Federal Common Laws of Contract & Fla Contract Laws.

12. All facts are incorporated herein by reference.

13. All Defendants are sued under the totality of circumstances criteria.

## IV. STATEMENT OF FACTS

### Cruel And Unusual Punishment ; Due Process, Free Speech, Fraud.

1. At all times herein, O'Connor was and is a Mental Patient in Inpatient Care on Psych Medications under Psychiatric Care.

2. A all times Defendants acted deliberately, maliciously, intentionally, wantonly, absent penological justifications.

3. On 12-11-11, while doing rounds, Reddish and O'Connor had a verbal disagreement about re-writing 12 D.R's that the 1st DCA invalidated due to O'Connor's' Mental Unstableness

4. Reddish, Combs, Cranford and Miller then took adverse action against O'Connor by abusing Him for exercising His Free Speech, per Reddishs' directions and approval.

5. Reddishs' et als' adverse actions were to deter and chill O'Connors' protected Free Speech.

6. Reddish et al intended to stop O'Connor from litigating to the Courts and from verbally challenging Reddishs' decision to have said D.R's rewritten.

7. Had O'Connor not litigated to the 1st DCA case # 1D11-3470, got D.R's invalidated and verbally objected to Reddish rewriting D.Rs, the abuses that ensued wouldn't have occurred.

8. Cranford came cellfront V-1114 where O'Connor was housed and advised O'Connor to not "argue" with warden Reddish.

9. Cranford wrote O'Connors' name on a paper with a list of other Inmates to place on strip, who didn't have their beds made during Reddishs' walk-around.

10. O'Connor had His bed made and did not know at the time what said list was for, until Sgt Cranford and CO Miller returned to work later that night.

11. Cranford and Miller returned to work and advised everyone including O'Connor on said list, to pack their property because they were going on strip-property restrictions.

12. Strip aka Property Restrictions consists of a cold cell with A/c blowing cold air, while the Inmate is clad in only boxers without any property whatsoever in the cell.

13. The videos will show that no Inmates lights and/or windows were covered, nor any property misused, warranting property restrictions / strip, as falsely alleged.

14. Cranford wrote bogus D.R's to justify said strip for all Inmates in V-Dorm that night on 12-11-11, on said list; where incident reports and D.Rs for different Inmates are similar.

15. Cranford, Miller Combs, et at knowingly, intentionally and maliciously made

VI   STATEMENT OF FACTS

materially, false statements that the lights and windows were covered.

16. UCI and FDOC superiors relied on, and approved said false statements, that caused injury to O'Connor as stated below, as intended by Cranford et al.

17. O'Connor initially refused to voluntarily give up the personal property, packed in two sheet bundles per staffs' orders.

18. O'Connors' personal property encompassed Court DEADLINE pleadings, Law Books, esoteric books, books of stamps, canteen hygene items, grey sweatshirt, etc...

19. Personal Property also included Long Johns set, canteen food, personal letters, radio with earphones and batteries, watch, Blue Gym shorts, etc.--

20. See 5-9-13 Notice to Risk Management regarding said property, incorporated herein by reference.

21. O'Connor commenced to smear feces on the celldoor out of paranoia and fear; to deter staff from abusing, Him as before, as threatened by Cranford, et al.

22. Combs who supervised a 5 man extraction team, advised O'Connor that He would abuse O'Connor for smearing feces, arguing with Reddish and litigating.

23. O'Connor eventually complied, submitted to restraints and was escorted to the Medical Triage Room.

24. While in Medical, Nurse Thompson gave O'Connor an involuntary injection of psych meds (ETO) per Dr Rumbawa' orders.

25. There was no penological justifications warranting said ETO, known to adversely affect O'Connor via locking limbs, headaches, & dizziness that O'Connor suffered.

26. O'Connor was not an IMMEDIATE THREAT to Himself, others, UCI or FDOC.

27. Dr Rumbawa ordered the ETO based on Thompsons' assessment of O'Connor that Thompson relayed to Dr Rumbawa via phone, who was not on-site.

28. Per FDOC and UCI custom, policy, practice; No Psychiatrist is ever on-site, at nights, early mornings or on weekends to assess Inmates 1-on-1.

29. Nurse Thompson is not a Psychiatrist to make Psychiatric Assessments and Dr Rumbawa is required to assess O'Connor 1-on-1, face to face via Rumbawa' observation.

30. After the ETO, Combs, Cranford and the team, placed O'Connor in a cold sHos (Self Harm Observation Status) cell, without adequate bedding unobserved, in cell V-2102.

31. The adverse effects of said ETO caused O'Connor to be dizzy, lightheaded,

VI   STATEMENT OF FACTS

weak; and made O'Connor fall on the floor hitting His head resulting in trauma and concussion.

32  O'Connor subsequently sought medical care via numerous sick-calls, and x-rays were done that's cheaper which cant detect nerve damages; only detects deformities in bones, etc..

33  No MRI, and/or other adequate ~~other~~ inquiries have been done on O'Connors' head to adequate diagnose and treat O'Connor's' head injury, due to costs.

34. After reviving from fall, Cranford and Miller denied O'Connor His breakfast said morning of 12-12-11, and other staff denied O'Connor meals several days on SHOS.

35. At that time, and to date, it was and is FDOC's and UCI's custom and practice to deny UCI their meals while on SHOS status, via empty trays &/or not opening food flap.

36. O'Connor was taken off SHOS after several days and was placed on strip in cell V-1114, for approximately 72 hours for the 12-11-11 incidents.

37. UCI's & FDOC's custom and practice is that strip status is suspended while on SHOS; though no penological justification(s) warrant(s) strip, to be re-initiated after SHOS.

38. O'Connor was already on strip for several days (over 72 hours) on SHOS with No property.

39. After being on strip AGAIN, O'Connors' state property was returned, but no personal property was returned until the 12-17-11 incident.

40. On 12-17-11, approximately 1:30 AM, Lt Combs, Sgt Cranford and CO Johnson, came cellfront V-1114 to allegedly return O'Connors' personal property in said two sheet bundles.

41. Personal Property are usually returned during daylight hours, while ~~awake~~ Inmates are awake, instead of asleep, under the influence of psych meds.

42. Also, staff usually only places handcuffs on the Inmate, while the Inmate steps outside the cell, while staff then places property inside the cell.

43. The Inmate re-enters the cell without staff entering the cell while the Inmate is inside the cell off the wing videos; but this routine was not followed.

44. O'Connor was not on Hightened security and NO penological justifications warranted O'Connor to be in full restraints to receive His personal property.

45. However, Cranford et al had full restraints of handcuffs, black-box, waiste chain, and leg shackles, to abuse O'Connor while defenseless as planned, while medicated & sleep.

46. Full restraints were placed on O'Connor, who was compliant, posed NO THREAT, and/or NEED FOR ANY FORCE.

47. Cranford ordered O'Connor to exit the cell; whenafter Cranford entered

## VI. STATEMENT OF FACTS

entered, searched and placed property inside the cell.

48. O'Connor then ordered O'Connor to re-enter the cell, to kneel and face the wall on the bottom bunk, to remove the restraints, to which O'Connor complied.

49. After O'Connor knelt and posed NO THREAT, Sgt Cranford brutally attacked O'Connor and CO Johnson joined in, off camera, inside the cell.

50. Both Cranford and Johnson maliciously, sadistically and wantonly kept swinging and connected blows by punching and kneeing O'Connor. ~~in the face~~.

51. Cranford and Johnson repeatedly hit O'Connor in the face, mouth, body, gastro area, eyes, back and hip several times, causing physical and mental-emotional injuries listed below.

52. Cranford and Johnson also maliciously, sadistically and wantonly slammed O'Connors' head in the wall several times, causing physical & mental injuries below.

53. Lt Combs knowingly, intentionally and wantonly supervised said brutal assault and battery, while standing cellfront with His body blocking the view of the wing camera.

54. Lt Combs was in a reasonable position with realistic opportunity to intervene, but didn't; and instead, encouraged said abuse that lasted several seconds.

55. O'Connor was then escorted in full restraints to medical, where Nurse Smith partially assessed O'Connor, and didn't write down all O'Connors' injuries sustained.

56. Nurse Smith knowingly and intentionally didn't record that O'Connor had damaged teeth, bleeding gums, laceration on the hip that was bleeding.

57. Nurse Smith didn't document the trauma, pain and suffering O'Connor complained about in His gastro region.

58. Nurse Smith did not conduct a full body post use of Force assessment required by policy to adequately and truthfully complete the body diagram during assessment.

59. Nurse Smith witnessed O'Connors' serious medical need for care for His visible swollen lip, bleeding gum, damaged teeth, swelling around eye, and bloodshot red eye.

60. O'Connor advised Smith of the pain, anguish and distress He was experiencing from the above injuries O'Connor relayed to Smith, and unseen injuries to His body.

61. Unseen injuries include gastro pain with red skin inflamation and burning gastro sensation where blows connected, and bleeding hip resulting in permanent scar from said lacerated hip.

62. Nurse Smith was aware of O'Connors' serious medical need for care for said injuries, trauma, laceration, pain, suffering, etc, but didn't respond appropriately.

## VI. STATEMENT OF FACTS

63. Nurse Smith was deliberately indifferent in adequately responding by disregarding O'Connors complaints, not providing adequate care such as pain meds, & dress bleeding wound.

64. Nurse Smith didn't refer O'Connor to the Medical Doctor, recommend Gastro-Specialist, Dentist, Optician, etc..

65. Smiths' acts and omissions caused O'Connor to continue bleed; with impair blurry vision; have pains & cramps in gastro region, pain in shoulders, hip, eyes, gum, teeth & lip.

66. O'Connors' headaches and dizziness continue to date; and has gastro issues for which He's awaiting approved hydascan, colonoscopy, gastro-surgery, & CRPS in shoulders needing MRI, etc..

67. O'Connor needs to see dentist for dentures and implant for extracted damaged teeth still needing removal, pain meds, etc...

68. O'Connor still needs to see optician for blurry vision with sparkles for which O'Connor needs glasses for difficulty seeing close up, to read, write, etc..

69. O'Connor was placed on SHOS in cell V-2102, per Psychiatrist Rumbawas' order, based on Nurse Smiths' assessment relayed via telephone to Dr Rumbawa per custom & practice.

70. Said SHOS cell was cold with A/C blowing cold air in the cold season, without adequate bedding as usual, per custom and practice.

71. Sometime between 2AM and 4AM, Sgt Cranford stood next to the stairs near cell V-2102, & acted as if holding His penis, making sexual gestures to O'Connor.

72. Cranford pretended as if O'Connor was giving Cranford oral sex, to harass O'Connor, while threatening O'Connor with additional abuses.

73. O'Connor was denied an opportunity to make a written statement of injuries & staff abuse, due to being on SHOS.

74. At some point between 2AM and 4AM, Captain Mercado approached the cell O'Connor was housed; harassing and threatening O'Connor with more abuses.

75. Between 2AM and 4AM, during said ONGOING harassment by Cranford, Johnson & Combs; said staff advised said abuses ensued from smearing feces, litigating & arguing with Reddish.

76. While on SHOS, per custom & practice, staff including Cranford et al, denied O'Connor several meals by not opening gilloteen and providing empty food trays.

77. O'Connor is of belief that said custom and practice is still in effect to deny SHOS Inmates their meals.

78. Cranford also knowingly, intentionally made false statements concerning a

IV. STATEMENT OF FACTS

material fact that O'Connor attacked (kicked) Cranford inside the cell warranting force used.

79. Cranford did not state, explaining the means by O'Connor could kick Cranford while kneeling on bottom bunk, facing wall in full restraints, half sleep, under the influence of psych meds.

80. Cranford did not explain in his incident reports falsified and bogus D.R's how MINIMAL amount of force caused O'Connors' injuries, which Combs and Johnson mimic.

81. Cranford did NOT document in detail how O'Connor allegedly kicked him, Cranfords injury(ies) from said alleged kick(s), examination and acceptance or declining examination.

82. Upon information and belief, no Form DC4-711A concerning Cranfords injury was ever completed per 33-602.210(12)(f), because there was no kick by O'Connor whatsoever.

83. Cranford, Combs & Johnson intended for UCI & FDOC superiors to rely on said fraud, to act on it; approving said use of force as being compliant with the Law.

84. Consequently, no criminal charges were filed against Combs, Cranford and Johnson as required by F.S 944.35, and the investigators relying on said fraud, closed the case.

85. Said fraud caused O'Connor serious physical and mental injuries stated herein, which continues to date.


Congressional Torts.

86. O'Connor is a qualified individual with Mental Disabilities such as depression, hallucination, etc; verified by FDOC Records & union County court, Incompetency Hearing Records.

87. O'Connors' Disabilities hinder him from participating in major life activities and functions.

88. O'Connor was deprived his personal property with materials needed to participate in reading and writing activities due to his paranoia.

89. O'Connor was deprived from participating in major life activities and functions such as eating and digesting food on SHOs, and was subjected to denial of meals & hunger.

90. O'Connors' paranoia, etc., resulted in his SHOs status, meals denied & hunger for days.

91. Medical advised O'Connor that not eating for a lengthy period caused his gastro acid to eat the stomach lining, that contributes to indigestion, acid reflux, etc.

92. O'Connor was subjected to take psych meds and gastro meds (from 2010 gastro surgery), on empty stomach, that contributed to upset stomach, nasea & other gastro issues.

VI. STATEMENT OF FACTS

93. O'Connor was denied adequate care including conditions of confinement, causing him to sleep on cold floor in cold season, with A/C blowing cold air

94. O'Connor went without adequate bedding and clothing due to His Mental Disability requiring SHOS status.

95. O'Connor was denied adequate care and safety & subjected to Cranfords' and Johnsons' excessive force, assault, and battery due to His paranoia.

96. O'Connors mental Illness caused Him to smear feces to protect Himself from staff abuses, that resulted in additional staff abuses.

97. O'Connor is a qualified individual with Dental Disabilities that impair proper eating, digestion & bowel movement.

98. O'Connors' damaged teeth from Cranfords' et al abuse, were extracted and needs another extraction, implants and/or root canal regarding extracted teeth.

99. Insufficient teeth inhibit adequate chewing, digestion of improperly chewed food, which contributes to inadequate bowel movement straining & defecating blood.

100. O'Connor is a qualified individual with shoulder Disabilities, which prohibit O'Connor from lifting heavy objects, sleeping or lying on shoulders & sides due to pain, etc..

101. O'Connor is prohibited from attending outside cell activities, due to rear restraints causing pain, tingly feeling & numbness in shoulders that extends to neck, face & hands.

102. Cranford & Johnsons excessive force of punching, kneeing and slamming O'Connor against the wall, caused O'Connor to use His shoulders to try block some of said blows.

103. Said shoulder defense resulted in shoulder trauma & injury including nerve damage.

104. Cranfords & Johnsons brutal attack contributed to an existing shoulder injury and shoulder Disabilities, resulting in CRPS, that worsens with time.

105. Said shoulder condition continues to inhibit O'Connors' participation in daily activities and functions, including exercises requiring shoulders, where range of motion is limited.

106. O'Connor is a qualified individual with gastro disabilities, and is prohibited from participating in major life activities and functions such as eating, digestion, bowel movement, sleep & exercises.

107. Besides O'Connors' deteriorated stomach lining aforesaid from meals denied, O'Connor has developed other gastro complications from Cranfords et al abuses.

108. Cranford & Johnson aggravated & agitated an existing gastro condition from the 2010

## II STATEMENT OF FACTS

**swallowing & gastro surgery.**

107. Said gastro issues were worsened by punching & kneeing O'Connor in the body, gastro region aforesaid, which inflicted injury & trauma to O'Connors' gastrointestines to date.

108. Emotional Disturbances, trauma (mental & physical) are known to cause blockages in the gastrointestines; leading to inflamation, constipation, gallstones & appendicitis.

109. Some of these issues are life threatening & can cause death; where, O'Connor is awaiting approved hydascan, endoscopy or colonoscopy, gastro surgery at RMC.

110. FDOC secretary & warden Andrews could have accommodated O'Connors Disabilities with adequate care; but did not do so.

111. Accommodations include but not limited to: front cuff pass, no heavy lifting pass, reconstructed nerve surgery; therapy; hydascan, colonoscopy (or endoscopy), gastro surgery, etc...

112. Additional accommodations include: providing dentures, implants, fillings, tooth extractions, MRI on head, adequate meds, adequate gastro diet for his health & sincere Jewish & SDM beliefs.

113. Further accommodations include: eye care, glasses for seeing close-up, etc.; where the expence to provide care doesn't outweigh O'Connors' need for adequate care & accommodations.

### Contracts

114. All Defendants took oaths upon being employed with FDOC, to provide adequate care, custody, control & confinement, and papers were signed to ensure same.

115. All Health Care staff were contracted via licensing with Fla Dept of Health (FDOH) to provide adequate care; & Doctors took Hippocratic Oaths to provide adequate care.

116. Sentencing Judge Backman issued a decree, i.e., uniform warrant of commitment to FDOC et al, to keep O'Connor and his property safely; to which all Defendants agreed.

117. The herein constitute offer and acceptance.

118. All Defendants herein recieved payment to perform their contractual duties to provide adequate care, custody, control and confinement.

119. Defendants breached said contracts, oaths, agreements, promises, etc by abusing O'Connor, starving him, subjecting him to inhumane conditions, discriminating, denying property, etc...

120. Said breach includes not accommodating his Disabilities; not providing adequate care, custody, control and confinement; not returning property, etc...

121. Said breach caused O'Connors' physical, mental & emotional injuries states herein.

## VI. STATEMENT OF FACTS
Injuries

122. Prior physical injuries preceding Mental & Emotional Injuries include but not limited to O'Connors' 2010 gastro surgery that left a permanent 4" scar.

123. Cranford & Johnson inflicting trauma via physical blows, caused pain, anguish and emotional distress in O'Connors gastro region.

124. Said abuse aggravated and agitated O'Connors' existent gastro condition from his 2010, gastro surgery.

125. Trauma (physical & emotional) by Cranford & Johnson, contributed to the blockage in O'Connors' digestive system; leading to constipation, gallstones, & appendicitis.

126. O'Connor awaits Aydascan, colonoscopy & gastro-surgery for said gastro conditions.

127. O'Connor still experiences severe gastro pains & cramps, that prohibits walking, standing, eating, sleeping, exercising, & participating in outside cell activities at times.

128. Due to Cranfords' & Johnsons' abuses to O'Connors' gastrointestines leading to complications, O'Connor needs a medical diet for His gastro & sincere Jewish-Siddha beliefs.

129. O'Connors' existing shoulder injuries from prior use of force were aggravated and agitated when Cranford & Johnson repeatedly gave OConnor blows & slammed Him in the wall.

130. Cranfords and Johnsons blows contributed to O'Connors' nerve damage, Complex Regional Pain Syndrome (CRPS) and trauma (physical & mental) regarding His shoulders.

131. The pain & numbness in O'Connors' shoulders is severe and extends to His face, neck & hands, that hinders participation in various activities requiring rear restraints.

132. O'Connors' shoulder injuries hinder O'Connor from exercising, & sleeping on His sides.

133. Cranfords & Johnsons physical blows aggravated and agitated O'Connors' existent dental injuries from past use of force; caused bleeding gum & swollen lip.

134. Cranfords' & Johnsons' physical blows to O'Connor, caused His gums to bleed, teeth to become damaged, cracked and shaking, warranting teeth extraction.

135. OConnor still has another front teeth needing extraction, root canal, etc, that gets infected and pains to date.

136. Due to Cranford & Johnsons blows to OConnor, O'Connor has permanent disfigurement of lossed teeth, that FDOC refuses to fix with root canal, implants & dentures.

137. FDOC policy prohibits: implants; dentures for two teeth; and root canal costs too much.

138. Cranfords' & Johnsons' blows to O'Connor caused a laceration, physical & mental trauma regarding O'Connors' hip that left O'Connor with a permanent scar of disfigurement.

V  STATEMENT OF FACTS

139. Cranfords' & Johnsons' blows to O'connor aggravated and agitated O'connors' existent eye injury and vision problems from prior staff abuses.

140. Prior staff abuses shifted the jelly in O'connors' eye per eye doctor in 2010.

141. O'Connor has problems seeing close-up, where vision gets blurry with sparkles and flashes of light, eye waters, with eye pain.

142. Cranfords' & Johnson abuses caused swelling around eye with bloodshot red eye

143. O'Connor remains in pain, anguish and emotional distress, while conditions worsen.


Imminent Danger

144. O'Connors' in Imminent Danger of dying due to appendicitis, where appendix is known to rupture and cause death.

145. O'Connors' gallstone issues are considered medical emergencies.

146. Rupture of the veins in O'Connors' esophagus is known to cause a massive and often fatal blood loss.

147. O'Connor remains with severe pains, anguish, distress, bloody stools, gastro and anal cramps, acid reflux, heartburns, etc, which enhances the above.

148. U/S Court of Appeals 11th Circuit case # 15-12329-D, O'Connor v Suwannee CI, and U.S. Dist Jacksonville Fla case # 3:15-CV-01387-TJC-JBT, O'Connor v Jones found Imminent Danger in said issues.

149. Both the 11th Circuits' finding and U.S Dist Jacksonville Fla finding of Imminent Danger are incorporated herein by reference.


Joinder of Claims & Parties

150. All matters herein are ongoing, arose from the same transaction, occurrence, and series of transactions and occurrences, with issue of Law & Fact common to all.

Case History incorporated herein by reference :-

U.S Sup. Ct.
12-10056,   11-6677,   11-7083,   10-5642,   11-5793,   13-7140, 15-5811

U.S Ct 11th Cir
11-12487-H,   11-12486-G,   11-12684-B,   10-15813-F,   10-12103-H,   09-1207,
10-14677,   11-11168,   11-12692,   11-12693,   12-11065,   12-11285,   12-11777,   12-11893,
12-12505,   12-12696,   13-13910,   14-10578,   14-10405,   14-13101,   14-14421, 15-12329

U.S Dist Ct. North Dist Fl.
3:05-CV-384,   3:06-CV-10,   3:06-CV-45,   3:06-CV-86,   3:08-CV-472,   3:09-CV-143,
4:10-CV-282,   3:10-CV-354,   3:10-CV-360,   3:09-CV-224,   3:13-CV-179,   3:08-CV-357,
4:14-CV-00401-RH-CAS.

U.S Dist Ct Middle Dist Fl
3:07-CV-407,   3:10-CV-296,   6:10-CV-1418,   3:10-CV-883,   6:11-CV-378,   3:10-CV-1123
3:11-CV-01059,   3:11-CV-307,   3:11-CV-252,   3:10-CV-01090,   3:13-CV-01298-HLA-TRK.
3:15-CV-394-J-32TRK,   3:15-CV-410-J-32-JBT,   3:15-CV-1387-J-32JBT
U.S Dist Ct South Dist Fl.
0:07-CV-60636,   0:07-CV-60902,   0:07-bk-12045,   0:09-CV-61099,
0:13-MC-62685-KMM,   0:14-CV-60468-PAW,   0:14-CV-60886-MGC,   0:14-CV-61355-WJZ.

Fla Sup Ct.
SC04-1309,   SC06-312,   SC06-313,   SC08-298,   SC08-746,   SC08-1097,   SC08-2237,
SC09-1259,   SC09-1395,   SC12-241,   SC12-241,   SC12-427,   SC12-435,   SC12-1315,   SC11-631,
SC11-2097,   SC12-2689,   16 So.3d133,   SC13-1881,   SC14-1403,   SC14-403,   SC14-807.

1st DCA
1D08-1102,   1D10-5664,   1D11-3470,   1D12-1748,   1D12-4074,   1D12-1500, 1D13-0790,
1D12-4099,   1D12-4669,   1D13-2013,   1D13-2492,   1D11-2873,   1D11-4981,  1D13-0653
1D11-3650,   1D11-4424,   1D12-4665,   1D13-0596,   1D13-0529,   1D13-0863,

2nd DCA: 2D14-4581.   2D14-4627,   2D15-1653

4th JCA
4J10-4525, 835 So2d 1226, 4J07-4563, 4J08-4196, 4J08-3740,
895 So.2d 523, 11 So.2d 133.

5th JCA
5J13-2951

Broward County Cir Ct FL
00-5223CF10B, 2006CA 12953

Leon County Cir Ct FL
2007CA446, 2007CA2545, 2007CA3187, 2008CA746, 2008CA3133,
2010CA2751, 2012CA824, 2012CA1255, 2012CA1288, 2012CA1591,
2012CA1824, 2012CA1875, 2012CA2174, 2012CA2209, 2012CA3776,
2012CA3777, 2010-CA-3930, 2010-CA-2411, 2012CA1495, 2011CA1158,
37-2011APS500, 2013SC00126, 2013SC1400, 2013SC001540

Santa Rosa County Cir Ct FL
2006CA116, 2008CA53, 2010CA116, 2011CA26, 2012CA32, 2012CA62,
63-2010-CA-0105, 63-2013-CA-1127 ~~63-2014-CA-0068,~~ 63-2014-0030, 63-2014-CA-0045,
63-2014-CA-0055, 63-2014-SC-0081

Lake County Cir Ct FL.
2012CA002174, 2013-CA-000272

Bradford
04-2013-CA-000583, 04-2014-CA-22

Charlotte County Cir Ct FL
14000475P, 14272SP, 140031 45P, 2014-1073-CA, 14001980CA.

* NOTE all cases not listed in said court due to lack of personal property,
are incorporated herein by reference.

Union County Court

2006 CA116, 2008 CA 53, 2010 CA116, 2011 CA 26, 2012 CA32, 2012 CA 62,
63-2014-CA-0030, 63-2010-CA-0105, 63-2013-CA-112, 63-2014-CA-0045,
63-2014-CA-0055, 63-2014-SC-0081, 63-2014-SC-0038, 63-2014-SC-0101,
63-2014-SC-0134, 63-2015-0023.

Suwanee County Court
See docket, property discarded by staff with number, probably
2014-DR-0086-RV.